# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DONNA MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:19-cv-00606 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| PERFORMANCE OF ) | MAGISTRATE JUDGE FRENSLEY |
| BRENTWOOD, L.P., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion to Dismiss and Compel Arbitration. (Doc. No. 9). Plaintiff filed a response (Doc. No. 15) and Defendant filed a reply (Doc. No. 16). For the reasons stated below, the motion to compel arbitration is **GRANTED** and the case is **STAYED**, pending further order of the Court, and the parties are ordered to participate in arbitration.

## I. BACKGROUND

Defendant Performance of Brentwood operates two automobile dealerships in Brentwood, Tennessee. (Compl., Doc. No. 1 ¶ 3). Plaintiff was employed by Defendant from approximately October 2013 to February 2019 as an Officer Manager and Assistant Controller performing bookkeeping work and ordering office supplies. (*Id*. ¶¶ 4, 5; Bruns Decl., Doc. No. 9-1 at ¶ 4; Moore Decl., Doc. No. 15-1 at ¶ 5). She was initially paid an hourly rate but began receiving a salary of $55,200 per year in 2015. (Compl., Doc. No. 1 ¶ 6; Moore Decl., Doc. No. 15-1 ¶ 6). Plaintiff states that she was required to clock in and out each day and that she routinely worked 50-70 hours per week and was not paid any overtime or other compensation for these hours. (*Id*.)

1

Plaintiff signed an arbitration agreement ("2013 Arbitration Agreement") when she began working for Defendant in October 2013. (*See* Bruns Decl., Doc. No. 9.1 at ¶¶ 5-6; 2013 Arbitration Agreement, Doc. No. 9-1 at 5). On August 27, 2015, Plaintiff signed an Employment Agreement, which also had an arbitration provision (the "Arbitration Agreement") which provided:

> <u>Arbitration</u>. Employee and Company agree that any controversy or claim arising out of or relating, directly or indirectly, to the Employee's employment, including any matter which is the subject of the Agreement; the terms and conditions (including benefits, if any) of Employee's employment by Company; or the termination of Employee's employment by Company shall be submitted to and settled by final and binding arbitration in accordance with Company's Employment Dispute Arbitration Procedure. Arbitration of any such dispute must be initiated within 180 days after the dispute first arises. Judgment on any award rendered by an arbitrator may be entered in any court having jurisdiction thereof. This paragraph shall not be construed to require arbitration between the parties prior to filing suit to obtain an injunction to restrain a violation or attempted violation of the restrictions set forth in paragraphs 6 [Hiring and Recruitment of Company Employees] and 7 [Company's Confidential Information] of this Agreement.
> …
>
> <u>Attorneys' Fees</u>. In this event of arbitration or litigation arising out of this Agreement, the prevailing party shall be entitled to recover its costs and expenses, including attorneys' fees, from the other party, in addition to all other relief to which it may be entitled. This paragraph replaces and supersedes all provision in the Company's Employment Dispute Arbitration Procedure concerning costs, expenses and attorneys' fees with regard to any dispute between the Company and Employee.

(Arbitration Agreement, Doc. No. 9-1 at 14, ¶¶ 8, 11). The Arbitration Agreement signed in 2015 differs from the 2013 Arbitration Agreement in that it adds the provision that the prevailing party may recover attorneys' fees and costs and that the arbitration provision does not apply to certain claims for injunction relief against Plaintiff. Plaintiff argues, and Defendant does not dispute, that the Arbitration Agreement signed in 2015 superseded the 2013 Arbitration Agreement. (*See* Pl. Br., Doc. No. 15 at 2; Def. Reply, Doc. No. 16).

The Company's Employment Dispute Arbitration Procedure referenced in the arbitration clause includes the following provision:

> This Procedure may be amended from time to time by the Company, as may be necessary or appropriate to give effect to the intent of this Procedure, in light of circumstances which arise after the date hereof; provided however, that any such amendment shall apply only to arbitrations initiated after the date of amendment. Employees shall be informed of amendments by the Company as soon as practicable after adoption.

(Doc. No. 9-1 at 10).

Plaintiff is 58 years-old. (Moore Decl., Doc. No. 15-1 ¶ 2). She has a GED and her primary work experience is as a bookkeeper. (*Id.*). Plaintiff claims that she was handed the Employment Agreement while at work and told to sign it. (*Id.* ¶ 7). She signed the papers and handed them back to office personnel at the dealership. (*Id.*). Plaintiff said that when she signed the documents, she understood that the "arbitration procedure was some type of procedure for addressing disagreements that might occur while [she] was at work," but had "no idea" she was giving up her right to file a lawsuit in court. (*Id.* ¶¶ 9, 10). In addition, Plaintiff states that she cannot afford to pay the costs of an arbitration or pay any attorneys' fees if her claim is unsuccessful. (*Id.* at ¶¶ 13, 14).

On July 19, 2019, Plaintiff filed this action pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA") alleging that Defendant violated the FLSA when it failed to pay Plaintiff overtime wages for hours worked over 40 in a workweek. (Compl., Doc. No. 1). On September 11, 2019, Defendant moved to compel arbitration and to dismiss the case. (Doc. No. 9).

## II.  LEGAL STANDARD

The question of whether Plaintiff's claim must be arbitrated is governed by the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1 *et seq*. The FAA "expresses a strong public policy favoring arbitration of a wide range of disputes" and provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370,

376 (6th Cir. 2005) (quoting *Cooper v. MRM Invest. Co.*, 367 F.3d 493, 498 (6th Cir. 2004) and 9 U.S.C. § 2). Whether a valid agreement to arbitrate exists is determined by state law. 9 U.S.C. § 2; *Cooper*, 367 F.3d at 498; *Howell v. Rivergate Toyota, Inc.*, 144 F. App'x 475, 477 (6th Cir. 2005)– in this case, the law of Tennessee. The parties agree Tennessee law governs the Employment Agreement. (*See* Doc. No. 9-1 at 15 (Tennessee choice of law provision)).

Courts regularly enforce agreements to arbitrate employment disputes, including those arising under the FLSA. *See Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 313 (6th Cir. 2000) (holding that FLSA claims are arbitrable). Any doubts regarding arbitrability must be resolved in favor of arbitration. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003)). Where a party establishes that there is a valid agreement to arbitrate the dispute, the Court must grant the motion to compel arbitration and stay or dismiss proceedings until the completion of the arbitration. *Id.* (citing 9 U.S.C. §§ 3-4). The party opposing arbitration has the burden to prove that there is a "genuine issue of material fact as to the validity of the agreement to arbitrate." *Brubaker v. Barrett*, 801 F. Supp. 2d 743, 750 (E.D. Tenn. 2001).

Defendant asserts that the agreement is valid and enforceable and that the claims raised in the litigation fall within its scope. In response, Plaintiff argues that the arbitration agreement as a whole is invalid and unenforceable because it was made without consideration or a meeting of the minds. In addition, Plaintiff argues that she did not knowingly and voluntarily waive her right to pursue her FLSA claims in federal court and the provisions that limit her substantive rights under the FLSA are unenforceable.

## A. Consideration

Plaintiff argues that there was no consideration or mutuality of obligation for the agreement to arbitrate because the Employment Dispute Arbitration Procedure allows the arbitration procedure "to be amended from time to time." Plaintiff contends that she was bound to comply with the specified arbitration procedure in place at the time she signed the Employment Agreement, but Defendant, who could alter the procedure at any time, was not mutually obligated to do the same.

In support of this argument, Plaintiff cites a number of cases invalidating arbitration agreements containing unilateral modification provisions. Unlike the facts presented here, the cases cited by Plaintiff involve modification provision that allow the employer to cancel the agreement to arbitrate altogether. *See Dumais v. American Golf Corp.*, 299 F.3d 1216, 1218 (10th Cir. 2002) (employer allowed to make unilateral changes to arbitration agreement allowed employer to "free reign to renege" on agreement to arbitrate; allowing one party to alter the arbitration agreement's existence or scope is illusory); *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1133 (7th Cir. 1997) (Cudahy, J., concurring) (finding employer's promise was illusory when contained in a manual allowing changes at any time without notice and specifically stating it "does not constitute a contract nor promise of any kind."). In *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir. 1999), the employer, but not employee, had the ability of cancel the agreement, but that was only one of a long list of considerations that led to the court holding that the employer breached the agreement to arbitrate by developing "so many biased rules" that were "so one-sided that their only purpose is to undermine the neutrality of the proceeding."

In two cases cited by Plaintiff, the courts held that even the ability of the employer to unilaterally void an arbitration agreement did not invalidate the agreement for lack of consideration so long as the employer incurred an obligation to arbitrate for some period of time. *See Morrison v. Circuit City Stores, Inc*., 317 F.3d 646 (6th Cir. 2004) (employers ability to alter or terminate the agreement on December 31 of each year upon thirty days' notice did not render the promise illusory); *Seawright v. Am. Gen. Fin*., 507 F.3d 967, 975 (6th Cir. 2007) (mutuality of obligation satisfied when employer had ability to terminate arbitration agreement with 90-day notice because employer would be bound by agreement for at least 90 days). Here, the Plaintiff does not argue that the modification provisions give the Defendant the right to unilaterally void the arbitration agreement entirely, only that it can modify the arbitration procedures.

*Floss v. Ryan's Family Steak Houses, Inc*., 211 F.3d 306 (2000), is distinguishable from this case. In *Floss*, the court held that an agreement to arbitrate was unenforceable because it allowed the defendant to modify the arbitration rules and procedures without the plaintiff's consent. Id. at 309. However, the arbitration agreement at issue in *Floss* was not, as here, an agreement between and employer and employee to arbitrate disputes, it was an agreement between the employee and a provider of dispute resolution services. *Id*. at 309. The dispute resolution provider obligated itself to provide an arbitral forum, not to submit its own disputes to resolution. The court held that the defendant's obligation to provide an arbitral form was "fatally indefinite" because the defendant reserved the right alter the applicable rules and procedures, effectively choosing the nature of its own performance. *Id*. at 316.

More on point is *Howell v. Rivergate Toyota, Inc*., 144 F. App'x 475 (6th Cir. 2005), in which the Sixth Circuit held that a similar modification provision in an arbitration agreement between an employer and employee did not render an arbitration agreement unenforceable. In

6

*Howell*, the plaintiff signed an arbitration agreement that included the same modification language as that at issue here – the employer had the right to amend the procedure "as may be necessary or appropriate to give effect to the intent of this Procedure, in light of the circumstances which arise after the date hereof." *Id*. at 477. The Sixth Circuit found the provision allowing unilateral amendment to the arbitration procedures did not render the contract unenforceable because the provision authorized only those changes "necessary or appropriate to give effect to the intent of the Procedure" and did not "authorize changes to the parties' substantive rights and obligations." *Id*. The court noted that purpose of the provision was to obligate the parties to arbitrate disputes and the authority to amend the procedure did not vitiate this obligation. *Id*. at 480. The *Howell* court specifically distinguished *Floss* based on the respective obligations of the parties. *Id*. at 480 (noting that the obligation of the defendant employer was to arbitrate disputes whereas the obligation of the defendant in *Floss* was to provide an arbitral forum).

The Court finds that the modification provision does not render Defendant's promise to arbitrate disputes illusory. The parties are mutually bound to arbitrate disputes "arising out of or relating, directly or indirectly, to the Employee's employment." Moreover, as in *Howell*, the Defendant's ability to modify the procedure is limited by terms of the agreement to "changes that promote the agreement's purpose." It does not allow Defendant to avoid its obligation to arbitrate.

**B. Meeting of the Minds**

Plaintiff argues that there was no meeting of the minds as to essential terms of the agreement because she was never provided with a copy of the "Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution" that are referenced in the Arbitration Procedure.

The Sixth Circuit has held that the failure to provide referenced arbitration rules is not sufficient to invalidate an otherwise valid arbitration agreement. *See Haskins v. Prudential Ins. Co. of Am.*, 230 F.3d 231, 239 (6th Cir. 2000), overruled on other grounds by *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003). In *Haskins*, the plaintiff claimed not to have received copies of an incorporated document that governed which disputes were subject to arbitration. *Id.* at 240. The result was that the plaintiff knew some disputes were subject to arbitration, but without the incorporated document, had no way of knowing which ones. *Id.* The *Haskins* court affirmed the principle that "one who accepts a written contract is conclusively presumed to know its contents and to assent to them, in the absence of fraud, misrepresentation, or other wrongful act by another contracting party." *Id.* at 139 (citing 17A Am. Jur. 2d. Contracts § 224 (1991)). The court held that the plaintiff was on notice that his claims "could be subject to arbitration" and that "because there was no showing of fraud, duress, mistake, or some other ground upon which a contract may be voided," the plaintiff was required to arbitrate his claims. *Id.*

Applying that principle here, the Court finds that the failure to provide a copy of the "Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution" does not void the agreement or render it unenforceable because Plaintiff has not shown any "fraud, duress, mistake, or some other ground upon which a contract may be voided."

**C. Waiver was Knowing and Voluntary**

A party's waiver of the constitutional right to a jury trial inherent in any agreement to arbitrate, to be valid, must be knowing and voluntary. *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 420 (6th Cir. 2011) (citing *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 755 (6th Cir. 1985). The question of the validity of the waiver of the right to a jury trial is governed

by federal law. *Id*. Whether a waiver was knowing and voluntary in a given case "is a constitutional question separate and distinct from the operation of rules of substantive contract law." *K.M.C. Co.*, 757 F.2d at 756 (citing *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185 (1972)). It is Plaintiff's burden to show that she did not voluntarily and knowingly waive her right to a jury trial. *Tillman v. Macy's, Inc.*, 735 F.3d 453, 460 (6th Cir. 2013); *see also K.M.C. Co.*, 757 F.2d at 758 ("We agree that in the context of an express contractual waiver the objecting party should have the burden of demonstrating that its consent to the provisions was not knowing and voluntary.")

In evaluating whether Plaintiff knowingly and voluntarily waived her right to pursue employment claims in court, the Court considers: (1) plaintiff's experience, background, and education; (2) the amount of time plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with an attorney; (3) the clarity of the waiver; (4) consideration for the waiver; and (5) the totality of the circumstances. *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003).

Plaintiff argues that none of the factors support the conclusion that her waiver was knowing and voluntary. Plaintiff states that she has a GED and is not highly educated like the plaintiff in *Morrison*. (Moore Decl., Doc. No. 15-1 ¶ 2). She claims that when she signed the documents, she understood only that the "arbitration procedure was some type of procedure for addressing disagreements that might occur while [she] was at work" and that she had "no idea" she was giving up her right to file a lawsuit in court. (*Id*. ¶¶ 9, 10). In addition, Plaintiff stated she had limited time to consider the arbitration agreement or review it with an attorney. (*Id*. at ¶ 7).

The plaintiff in *Morrison* was a "highly educated managerial employee," but courts have found a knowing and voluntary waiver from persons with a similar level of education. *See Sako*

*v. Ohio Dept. of Admin. Servs.*, 278 F. App'x 514, 518 (6th Cir. 2008) (waiver from a French-speaking African immigrant with a high school education); *Dunn v. Gordon Food Serv., Inc*., 780 F. Supp. 2d 570, 577 (W.D. Ky. 2011) (high school education); *Moore v. Ferrellgas, Inc*., 533 F. Supp.2d 740, 749 (W.D. Mich. 2008) (high school education).

Although Plaintiff states that she "was handed the document while at work and was told to sign them," she does not claim to have requested more time to review the documents or to have them reviewed by an attorney. Nor does she indicate that she was under any pressure to sign the documents immediately – only that she "just signed them while [] at work and handed them back to office personnel at the dealership." (Moore Decl., Doc. No. 15-1 ¶ 7). Moreover, this was Plaintiff's second time to review and sign an arbitration agreement with this employer. The two years between signing the first agreement and the second agreement allowed ample time to consider the agreement to arbitrate and weigh in favor of a finding that the waiver was knowing and voluntary. See also, *Shupe v. Asplundh Tree Expert Co*., 566 F. App'x 476, 482-83 (6th Cir. 2014) ("[I]n the absence of any evidence that [plaintiff] requested more time to review the Waiver, indicated that she did not understand the Waiver, or asked for time to have an attorney review the Waiver, this factor weighs heavily in favor of [plaintiff's] having knowingly and voluntarily executed the Waiver")

Plaintiff seeks support from *Trumbell v. Century Mktg. Corp*., 12 F. Supp. 2d 683 (N.D. Ohio 1998), which found an arbitration provision requiring "any and all disputes arising out of employment with the Company will be resolved through arbitration" was insufficient to create a clear and knowing waiver of the right to a jury trial. *Id*. at 684, 687. The *Trumbell* decision is not binding authority and appears to be an outlier from other decision in this circuit. In addition, the totality of the circumstances surrounding the arbitration agreement in in *Trumbell* are quite

different than those here. In *Trumbell*, the arbitration provision the plaintiff allegedly agreed to was buried in two pages of a sixty-page employee handbook. *Id*. at 687. Although the plaintiff had acknowledged receipt of the handbook, the acknowledgement did not specifically refer to the arbitration agreement or even state that plaintiff agreed to be bound by the provisions in the handbook. *Id*. Under those circumstances, the court held plaintiff had not knowingly waived her right to a judicial forum. *Id*.

On the other hand, the Employment Agreement signed by Plaintiff consists of sixteen numbered paragraphs on just over three pages – each paragraph has an underlined heading, including the arbitration clause – and Plaintiff acknowledged awareness of the arbitration provision and her understanding that arbitration was a "procedure to address disagreements that might occur while at work." In addition, the arbitration provision here appears to be more detailed than that in *Trumbell*, specifically stating that claims relating to "Employee's employment … terms and conditions (including benefits, if any) of Employee's employment by Company [and] the termination of Employee's employment by Company" will be submitted to arbitration. (*See* Employment Agreement, Doc. No. 9-1 at 14). The Arbitration Procedure provides considerably more detail regarding the arbitration process. More significantly, the Employment Agreement Moreover, the Sixth Circuit has "flatly rejected the claim that an arbitration agreement must contain a provision expressly waiving the employee's right to a jury trial." *Cooper v. MRM Invest. Co.*, 367 F.3d 493, 506 (6th Cir. 2004). Rather, "the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate." *Id*. (quoting *Burden v. Check into Cash of Ky., LLC*, 267 F.3d 483, 492 (6th Cir. 2001)).

Finally, as discussed above, Plaintiff received consideration for the agreement in the form of continued employment and the mutual obligation of Defendant to arbitrate disputes arising out

11

of the employment. The cases in which court have found a waiver was not knowing and voluntary involve undue pressure, misrepresentations, or an arbitration clause buried in pages of another document. *See Walker*, 400 F.3d at 381-383 (employer provided misleading information when asked about the arbitration agreement and employees were instructed to sign "on the spot" to be considered for employment); *Trumbell*, 12 F. Supp. 2d at 687 (arbitration provision contained in two pages of a sixty-page document). None of these factors is present here.

Considering the abovementioned factors, and the totality of the circumstances, the Court finds that Plaintiff has failed to show that the agreement to arbitrate was not knowing and voluntary.

**D. Enforceability of Additional Provisions**

Plaintiff argues that several provisions in the arbitration agreement are unenforceable because they alter or limit the statutory rights afforded to Plaintiff by the FLSA. Specifically, Plaintiff complains of the cost-splitting provision by which the "parties shall share equally the fees of the Arbitrator," arguing that the cost of arbitration is much higher than the up-front cost of litigation in federal court and the cost burden of arbitration would cause Plaintiff to forego her rights.

Similarly, Plaintiff argues that the arbitration agreement sets rules for an award of fees and costs that alter the rights afforded to plaintiffs under the FLSA and created a disincentive for plaintiffs to bring claims. The original arbitration agreement includes fee-shifting provision, by which the prevailing party is entitled to an award to fees and costs. A superseding provision requires that each party bears its own costs and expenses and allow the arbitrator to award costs to either party only in the event of a frivolous claim. Plaintiff complains that due to limited financial resources, she can only retain counsel on a contingency basis to bring suit to enforce her rights

12

under the FLSA and that "if forced to pay the costs and expenses of an arbitration or if she is faced with the prospect of paying the fees of the attorneys for Defendant in the event that she loses her case, she will be unable to pursue her FLSA claim." (Pl. Resp., Doc. No. 15 at 18).

Plaintiff also complains that the Arbitration Agreement reduces the statute of limitations from a two or three-year period to 180 days, which would deny Plaintiff a remedy for most or all of her claim. Finally, Plaintiff argues that a provision in the Arbitration Agreement requires the parties to resolve disputes about the arbitration itself in the District Court of Bexar County, Texas. Plaintiff complains that seeking relief in a Texas Court is unwarranted and would add significant additional costs to an arbitration, presenting an additional obstacle to Plaintiff's ability to pursue her federal statutory rights.

Defendant responds that these provisions of the agreement are severable and stipulates that it will not enforce these provisions with respect to Plaintiff's claims in this suit.[1] Specifically, Defendant states that it will not enforce the Employment Agreement, Section 11 (Attorneys' Fees); or The Employment Dispute Arbitration Procedure, Section 3A (180-day limitations period), Section 4A (cost splitting of Arbitrator's fee), and Sections 3F, 3G, and 8C (providing for resolution of disputes about arbitration in Bexar County, Texas).

The Court interprets these stipulations to mean that Defendant agrees that the arbitrator will apply the FLSA statute of limitations under, 29 U.S.C. § 255(a), the arbitrator will apply the FLSA provision regarding attorneys' fees and costs under 29 U.S.C. § 216(b), and the costs of arbitration for the Plaintiff will not exceed those which she would reasonably incur in court. In light of these stipulations, the Court will not consider whether these provisions of the Arbitration Agreement are enforceable. However, should the Defendant fail to abide by the stipulations given

---

[1] The Employment Agreement and the Arbitration Procedure contain severability clauses. (Doc. No. 9-1 at 14; Doc. No. 9-1 at 10).

in its Reply (Doc. No. 16 at 5), Plaintiff may file a motion for relief from judgment under Federal Rule of Civil Procedure 60.

### III. CONCLUSION

For the reasons stated, and in consideration of the stipulations provided by Defendant, Defendant's motion compel arbitration is **GRANTED** and this action is **STAYED**, pending further order of the Court. The parties shall jointly file a status report on June 1, 2020, and every six months thereafter.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE